IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. PHILLIP COX, and PHILLIP COX, individually, | ) ) ) ) | 4:07CV3264 |
| Plaintiffs, | ) ) ) | **MEMORANDUM AND ORDER** |
| v. | ) ) | |
| GENERAL DYNAMICS ARMAMENT AND TECHNICAL PRODUCTS, INC., | ) ) ) ) ) | |
| Defendant. | ) | |

The defendant, General Dynamics Armament and Technical Products, Inc. ("GDATP"), has filed a motion to dismiss a 3-count complaint filed by Phillip Cox ("Cox"), as a *qui tam* relator[1] and also in his individual capacity. Cox is a federal employee who was assigned by the Defense Contract Management Agency to work as a Quality Assurance Specialist at GDATP's plant in Lincoln, Nebraska, between September 2004 and January 2007. He claims GDATP has violated (1) the False Claims Act ("FCA"), 31 U.S.C. § 3729, by "billing for services not rendered" and making "false submissions for certification" and "false billings/claims" to the federal government; (2) the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962, by conspiring with four other General Dynamics companies and committing mail and wire fraud in order "to prevent [Cox] from keeping his security

---

[1]A *qui tam* action is one in which a private plaintiff sues on behalf of the government under a statute that awards part of any penalty recovered to the plaintiff and the remainder to the government. *Hays v. Hoffman*, 325 F.3d 982, 986 n. 1 (8th Cir. 2003).

clearance because he was costing them money by requiring contract specification compliance and [to] prevent [Cox] from receiving a promotion"; and (3) state and federal whistleblower statutes, including § 3730(h) of the FCA, by making false and defamatory statements to Cox's supervisor in retaliation for Cox's repeated refusals "to sign off [on] non-compliant parts so as to allow [GDATP] to submit false claims." (Complaint (filing 1), ¶¶ 1, 25, 43-44.)

GDATP contends (1) the court lacks subject matter jurisdiction to hear the FCA claim because it is based upon allegations of false claims that Cox made in an earlier lawsuit; (2) Cox failed to plead with particularity the circumstances of the fraud alleged in the FCA and RICO claims; (3) the RICO claim fails because a pattern of racketeering activity has not been pleaded, and because, as a matter of law, the General Dynamics companies cannot have conspired among themselves; and (4) the whistleblower statutes claim fails because Cox was not employed by GDATP.

Cox concedes in his response that "it would be appropriate at this time to dismiss Plaintiff's claims for Racketeering and for violations of the whistleblower statutes." (Filing 44, at 12.) As to the FCA claim, however, Cox maintains he has pleaded sufficient facts to establish subject matter jurisdiction and to satisfy the heightened pleading requirement for fraud. In the event the court determines the FCA claim has not been pleaded with sufficient particularity, Cox requests leave to amend the complaint.

The United States has given notice that it declines to take over the handling of the FCA claim. *See* 31 U.S.C. § 3730(b)(4). The government requests, however, that any dismissal of the action be without prejudice to its interests.

Counts 2 and 3 of the complaint are deemed withdrawn by Cox and will be dismissed without prejudice. GDATP's motion to dismiss count 1 (the FCA claim) pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter

jurisdiction, will be denied. GDATP's motion to dismiss count 1 pursuant to Federal Rule of Civil Procedure 9(b), for failure to state with particularity the circumstances of the alleged fraud by GDATP, will be granted, but Cox will be granted leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

With the dismissal of counts 2 and 3, Cox no longer will be a party plaintiff in his individual capacity. He will only be a *qui tam* relator suing on behalf of the United States with regard to count 1. Because the dismissal is uncontested and will not be subject to an interlocutory appeal, I find there is no just reason to delay entry of a final judgment that will simplify the case. Therefore, pursuant to Federal Rule of Civil Procedure 54(b), a final judgment will be entered dismissing counts 2 and 3 of the complaint without prejudice, and dismissing Cox as a party plaintiff in his individual capacity.

## I. BACKGROUND

On June 15, 2009, after the United States filed notice that it was declining to intervene in this action, the court ordered unsealed a complaint that Cox had filed over 18 months earlier, on November 26, 2007. Named as defendants were GDATP and four affiliated companies, General Dynamics Advanced Information Systems, Inc. ("GDAIS"), General Dynamics Aerospace, Inc. ("GDA"), General Dynamics Combat Systems, Inc. ("GDCS"), and General Dynamics Marine Systems, Inc. ("GDMS"). Cox subsequently moved to dismiss all defendants except GDATP; the motion was granted on August 31, 2009, and the court entered judgment pursuant to Federal Rules of Civil Procedure 41(a) and 54(b), dismissing without prejudice all claims alleged against GDAIS, GDA, GDCS, and GDMS.

GDATP's pending motion to dismiss was filed on September 4, 2009, but briefing was not completed until November 9, 2009. Essentially, GDATP contends the court is prevented from exercising jurisdiction over the FCA claim because Cox

previously made the same allegations in an unsealed pleading in a different lawsuit, and Cox is unable to avoid the FCA's "public disclosure" bar because he learned of GDATP's alleged fraud while working for the government.[2] GDATP also contends the alleged fraud has not been pleaded with particularity.

### A. The Complaint

Material allegations regarding the FCA claim[3] include:

1. "[Cox] has been a Quality Assurance Specialist working for the United States Federal Government for the last 33 years." (Complaint (filing 1), ¶ 12).

2. "A Quality Assurance Specialist works with and supervises defense contractors and their production of goods for the U.S. Government." (*Id.*, ¶ 13).

3. "From September 2004 to the present, Plaintiff has been stationed in Lincoln, Nebraska. As the primary part of his duties, Plaintiff was assigned to work as a Quality Assurance Specialist at GDATP's Lincoln Plant. Specifically, he worked to ensure the quality of goods produced by GDATP including parts for Blackhawk helicopters and other military equipment." (*Id.*, ¶ 16).

4. "GDATP . . . is engaged in the business of, inter alia, supplying products to the United States as a result of which Defendant has received and continues to receive well over $10,000,000.00 per year. (*Id.*, ¶ 19).

---

[2] Significantly, GDATP does not contend Cox's federal employment is a *per se* bar to the FCA claim.

[3] The False Claims Act imposes liability for knowingly presenting false or fraudulent claims to the government for payment or approval. *Green v. City of St. Louis,* 507 F.3d 662, 667 (8th Cir. 2007).

5. "GDAIS, GDATP, GDA, GDCS, and GDMS are each one of the many companies under the General Dynamics umbrella." (*Id.*, ¶ 36).

6. "Defendants knowingly, unlawfully, intentionally, willfully, and wrongfully submitted false claims, records, and statements to officials of the United States for the purpose of obtaining payment or approval in connection with a series of contracts and modifications that Defendant GDATP has entered [into] with the United States Government." (*Id.*, ¶¶ 20, 28).

7. "In addition, on numerous occasions subsequent to the above mentioned acts [GDATP], at a minimum, knowingly, intentionally, and willfully submitted claims, records, and statements to officials of the United States for payment and/or approval of the production and delivery items, products, and services that did not meet the requirements and standards set forth in GDATP's contracts with the United States." (*Id.*, ¶¶ 21, 29).

8. "Each of the hundreds of items, products, and services discussed above as delivered by [GDATP] to the United States and the thousands presently being assembled fail to meet applicable specifications and standards." (*Id.*, ¶¶ 22, 30).

9. "The United States has been damaged by all of the above mentioned misrepresentations and false claims in [the] sum of not less than $5,000,000.00, in that with respect to each of the items and products delivered to the United States, Defendants knowingly made false claims to officials of the United States for the purpose of obtaining payment or approval for each and for the services related to those above listed items." (*Id.*, ¶¶ 23, 31).

10. "Plaintiff has reported false claims made by GDATP to the U.S. Government. Plaintiff has also reported shoddy production and manufacturing practices by General Dynamics that, upon information and belief, have cost the lives

of U.S. soldiers, and are likely to do so in the future. Plaintiff has been working with authorities in his capacity as a whistleblower." (*Id.*, ¶ 17).

11. "[Cox] is the original source of this information to the United States. He has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under the False Claims Act which is based on this information." (*Id.*, ¶ 10).

### *B. The Earlier Action*

GDATP argues that the factual basis for the FCA claim was publicly disclosed by Cox in an earlier action filed in this court on June 22, 2007, against GDATP, GDAIS, and two other defendants, Colonel Rebecca N. Seeger ("Seeger"), and the Defense Contract Management Agency ("DCMA"). In that action, Case No. 4:07CV3168, Cox initially asserted claims against GDATP for defamation, tortious interference with a business relationship, and intentional infliction of emotional distress, while making other claims against Seeger and DCMA. However, in an amended complaint filed on November 12, 2007, Cox added claims against GDATP for FCA and RICO violations and dropped all of his claims against Seeger and DCMA.[4] Cox filed a motion to dismiss the action without prejudice on November 26, 2007, the same date the present action was filed under seal.[5] The motion was granted and a judgment of dismissal without prejudice was entered on December 21, 2007.

---

[4] The amended complaint was filed without leave of court, but this was permissible under former Rule 15(a)(1) of the Federal Rules of Civil Procedure since no "responsive pleading" had been filed to the original complaint.

[5] GDATP responded that it did not oppose the motion to dismiss, but that it "preserve[d] all arguments that it might have regarding what effect the dismissal of this case might have on any other lawsuit that Plaintiff has filed or might file in the future in his individual capacity or in any other capacity." (Case No. 4:07CV3168, filing 39, at 2.)

Material allegations regarding the FCA claim against GDATP in the dismissed action were similar or identical to allegations in the present action, and included:

1. "Plaintiff has been a Quality Assurance Specialist working for the United States Federal Government for the last 33 years." (Amended Complaint in Case No. 4:07CV3168 (filing 36), ¶ 8.)

2. "A Quality Assurance Specialist works with and supervises defense contractors and their production of goods for the U.S. Government." (*Id.*, ¶ 9.)

3. "From September 2004 to the present, Plaintiff has been stationed in Lincoln, Nebraska. As the primary part of his duties, Plaintiff was assigned to work as a Quality Assurance Specialist at Defendant GDATP's Lincoln Plant. Specifically, he worked to ensure the quality of goods produced by General Dynamics including parts for Blackhawk helicopters and other military equipment." (*Id.*, ¶ 12.)

4. "GDATP . . . is engaged in the business of, inter alia, supplying products to the United States as a result of which Defendant has received and continues to receive well over $10,000,000.00 per year." (*Id.*, ¶ 21.)

5. "Defendant knowingly, unlawfully, intentionally, willfully, and wrongfully submitted false claims, records, and statements to officials of the United States for the purpose of obtaining payment or approval in connection with a series of contracts and modifications that Defendant GDATP had entered with the United States Government. (*Id.*, ¶ 22, ¶ 51.)

6. "In addition, on numerous occasions subsequent to the above mentioned acts Defendant GDATP took at least the following actions:

    a. Knowingly, intentionally, and willfully submitted claims, records, and statements to officials of the United States for payment or approval of the production and delivery of:

    i. Blackhawk Helicopter with fuel tanks that were not compliant with the terms of the contract for their construction and delivery in that they had loose cable nuts inside the Blackhawk External Fuel Tank;

    ii. Blackhawk Helicopter with fuel tanks that were not compliant with the terms of the contract for their construction and delivery in that they had improper adhesive and other defects;

    iii. Tomahawk launch tubes that were not compliant with the terms of the contract for their construction and delivery in that they had bolts that were stripped or unsatisfactory;

    iv. Tomahawk launch tubes that were not compliant with the terms of the contract for their construction and delivery in that they had defects in their ford [sic] and aft fitting;

    v. Switching parts off of approved equipment after the equipment was inspected and approved and submitting the invoice for said equipment;

    vi. Other false claims as documented by Product Quality Deficiency Reports and Reports of Discrepancies; and

    vii. For related technical services on the false representations, including in particular that each of the above listed items complied with all specifications." (*Id.*, ¶¶ 23, 52.)

7. "Each of the hundreds of items discussed above as delivered by Defendants to the United States and the thousands presently being assembled fail to meet applicable specifications as set forth above." (*Id.*, ¶¶ 24, 53.)

8. "On numerous occasions subsequent to the above mentioned acts, Defendant knowingly, intentionally, and willfully submitted claims, records, and statements to

officials of the United States for payment or approval of the production and delivery of the above listed items and for related technical services on the false representations set for the in the complaint, including in particular that each of the above listed items complied with all specifications." (*Id.*, ¶ 54.)

9. "The United States has been damaged by all of the above mentioned misrepresentations and false claims in [the] sum of not less than $5,000,000.00 in that with respect to each of the above listed items delivered to the United States, Defendants knowingly made false claims to officials of the United States for the purpose of obtaining payment or approval for each of the above listed items and for the services related to those above listed items." (*Id.*, ¶¶ 25, 55.)

10. "Plaintiff has reported false claims made by General Dynamics to the U.S. Government. Plaintiff has also reported shoddy production and manufacturing practices of General Dynamics that, upon information and belief, have cost the lives of U.S. Soldiers, and are likely to do so in the future. Plaintiff has been working with authorities in his capacity as a whistleblower." (*Id.*, ¶ 19.)

11. "Prior to the filing of this action, Plaintiff provided the information upon which this complaint is based to the U.S. Government. Upon information and belief, Plaintiff believes that the U.S. Government is investigating the information he provided." (*Id.*, ¶¶ 26, 56.)

## II. DISCUSSION

Congress passed, and President Lincoln signed, the False Claims Act of 1863 to combat the "massive frauds" committed by government contractors against the Union Army during the Civil War. *Wilkins v. St. Louis Housing Authority*, 314 F.3d 927, 933 (8th Cir. 2002) (quoting *United States v. Bornstein*, 423 U.S. 303, 309 (1976)). Debates at the time suggest that the Act was intended to reach all types of

fraud, without qualification, that might result in financial loss to the Government. *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).

> In addition to creating stiff civil and criminal penalties for fraud, the Act allowed any person to bring suit against the offending profiteers under its *qui tam* provisions, promising successful *qui tam* plaintiffs one-half of the damages and forfeitures ultimately recovered and collected. . . . The 1863 Act required *qui tam* plaintiffs to bear the costs of their litigation efforts, in order to discourage frivolous lawsuits. However, it contained no requirement that the allegations of fraud originate from the investigative efforts of the plaintiffs themselves, and it did not prohibit plaintiffs from bringing suits based exclusively on information that was already in the government's possession. . . .
>
> In 1943, however, after a decade in which New Deal and World War II government contracts boomed and *qui tam* suits correspondingly surged, the Supreme Court in *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), spotlighted the pitfalls of the overly generous *qui tam* provisions then in effect. . . .
>
> *Hess* inspired public outcry over the liberality of the *qui tam* provisions that prompted speedy congressional response. Eleven months after the opinion was handed down, President Roosevelt signed tightening amendments to the False Claims Act . . . [which] barred *qui tam* suits that were "based on evidence or information the Government had when the action was brought." 31 U.S.C. § 3730(b)(4) (1982) (superseded).
>
> . . . The case of *United States ex rel. Wisconsin v. Dean*, 729 F.2d 1100 (7th Cir. 1984), marked the nadir of the *qui tam* action. In *Dean*, the Seventh Circuit held that the FCA barred a *qui tam* suit "whenever the government has knowledge of the 'essential information upon which the suit is predicated' before the suit is filed, even when the plaintiff is the source of that knowledge." *Id.* at 1103 (citing *United States ex rel. Weinberger v. Florida*, 615 F.2d 1370, 1371 (5th Cir.1980)).

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649-50 (D.C. Cir. 1994).

Congress amended the FCA in 1986, however, to permit *qui tam* suits based on information in the Government's possession, except where the suit was based on information that had been publicly disclosed and was not brought by an original source of the information. *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997). The 1986 amendments were "an attempt to reach the mean between the two extremes represented by *Hess* and *Dean*[.]" *United States ex rel. Rabushka v. Crane Co.,* 40 F.3d 1509, 1520 (8th Cir. 1994).

### A. Subject Matter Jurisdiction

In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments.[6] *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir.1990)). In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Id.* The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-58 (2007)). For the reasons discussed

---

[6] A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

11

below, I conclude that Cox's complaint, on its face, avers sufficient facts to confer subject matter jurisdiction. GDATP has not challenged the factual truthfulness of Cox's jurisdictional averments.

The 1986 amendments to the FCA were intended "to encourage private enforcement suits by legitimate whistleblowers while barring suits by opportunistic *qui tam* plaintiffs who base their claims on matters that have been publicly disclosed by others." Hays, 325 F.3d at 987. Thus, the Act now provides: "No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless . . . the person bringing the action is an original source of the information." 31 U.S.C. §3730(e)(4)(A). This jurisdictional inquiry turns on four questions:

> (1) whether the alleged "public disclosure" [was made by or in] one of the listed sources; (2) whether the alleged disclosure has been made "public" within the meaning of the FCA; (3) whether the relator's complaint is "based upon" this "public disclosure"; and, if so, (4) whether the relator qualifies as an "original source" under § 3730(e)(4)(B)."

Hays, 325 F.3d at 987 (quoting United States ex rel. Holmes v. Consumer Ins. Group, 318 F.3d 1199, 1203 (10th Cir. 2003) (en banc)).

The term "hearing" as used in 31 U.S.C. §3730(e)(4)(A) has been held "to encompass the full range of proceedings in a civil lawsuit . . .." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1156-57 (3d Cir. 1991) ("Information gleaned in litigation and on file in the clerk's office" is a public disclosure). See also *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 553-54 (10th Cir. 1992) (allegations in prior civil suit are "publicly disclosed" within meaning of § 3730(e)(4)(A)); *United States ex rel.*

12

*Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 46 (D. D.C. 2007) ("It has been established that a 'civil hearing' encompasses pleadings and other materials filed in civil litigation, and not just live 'hearings' in open court, so long as the paper matter is not subject to a protective order"). Cox does not dispute that his pleadings in the previously filed lawsuit constitute a public disclosure.

Cox "vehemently denies" that the present action is "based upon" allegations made in the prior litigation (filing 44, at 10), but he offers no explanation and cites no supporting authority for this denial. The Eighth Circuit has held that "a *qui tam* suit is 'based upon' a public disclosure whenever the allegations in the suit and in the disclosure are the same, 'regardless of where the relator obtained his information.'" *Minnesota Ass'n. of Nurse Anesthetists v. Allina Health Sys. Corp.,* 276 F.3d 1032, 1045 (8th Cir. 2002) (rejecting minority view "that 'based upon' should be given its ordinary meaning of 'derived from,' so that the *qui tam* allegation must have resulted from the disclosure in order to bar jurisdiction."). There is no question that the allegations Cox makes against GDATP in the present action were also made in the amended complaint that Cox filed in Case No.4:07CV3168.

Whether the public disclosure bar applies to deprive the court of subject matter jurisdiction in this case therefore depends on whether Cox was an "original source" of the allegations made in the prior case. Considering that Cox filed both lawsuits, this would seem to be a foregone conclusion. GDATP takes the position, however, that Cox is disqualified from bringing the present action because he learned of the alleged FCA violations during the course of his employment as a federal Quality Assurance Specialist, and he was required as part of his job duties to provide the information to the government.

Under section 3730(e)(4)(B), a claimant is deemed an original source if he or she (1) has "direct and independent knowledge of the information on which the allegations are based" and (2) has voluntarily provided the information to the

13

"Government" before filing the *qui tam* suit. *Minnesota Ass'n of Nurse Anesthetists*, 276 F.3d at 1048. There is no requirement that the relator must have revealed the allegations to the government before the public disclosure in order to be an original source. *See id.*, at 1050.

The Eighth Circuit has interpreted "independent knowledge" to mean "knowledge that is not derived from the public disclosure." *Id.*, at 1048. *See also United States ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 703 (8th Cir. 1995) ("'Independent knowledge' has been consistently defined as knowledge that is not dependent on public disclosure.") (citing *Stinson, Lyons, Gerlin & Bustamante*, 944 F.2d at 1160.[7] The meaning of "direct knowledge" is less clearly defined, but the term connotes the "absence of an intervening agency" in the relator's acquisition of the knowledge. *See Minnesota Ass'n of Nurse Anesthetists*, 276 F.3d at 1048. A relator is said to have direct knowledge of fraud when he "saw [it] with his own eyes." *Barth*, 44 F.3d at 703 (quoting *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 656 (D.C. Cir. 1994)). The direct knowledge requirement was intended to avoid parasitic lawsuits by "disinterested outsider[s]" who "simply stumble across an interesting court file." *Id.* (quoting *United States ex rel. Stinson*,

---

[7] The First Circuit held in *United States ex rel. LeBlanc v. Raytheon Co., Inc.*, 913 F.2d 17, 20 (1st Cir. 1990), that a Quality Assurance Specialist for the Defense Contract Administrative Service did not have "independent knowledge" of alleged fraud committed by a defense contractor because "[i]t was [his] responsibility, a condition of his employment, to uncover fraud. The fruits of his effort belong to his employer —the government." This reasoning was explicitly rejected by the Eleventh Circuit in *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1500 n.13 (11th Cir. 1991) ("In our view, the *Raytheon* court went one step too far. Once it found no 'public disclosure,' its inquiry should have ended and jurisdiction should have been acknowledged. The application of the 'original source' exception to the jurisdictional bar in order to defeat jurisdiction that already existed, was improper."). Using the Eighth Circuit's definition of "independent knowledge", it does not matter that Cox is a federal employee because he did not derive information from his own public disclosure.

14

*Lyons, Gerlin & Bustamante v. Provident Life & Accident Ins. Co.*, 721 F.Supp. 1247, 1258 (S.D. Fla.1989)).

The Tenth Circuit has held "that 'a government employee who obtains information about fraud in the scope of his or her employment, and who is required to report that fraud' is a 'person' under § 3730(b)(1) and is not otherwise prevented from acting as a relator." *United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.,* 540 F.3d 1180, 1184 (10th Cir. 2008) (quoting *United States ex rel. Holmes v. Consumer Ins. Group,* 318 F.3d 1199, 1204 (10th Cir. 2003)). Prior to the 1986 amendments, federal employees were effectively barred from bringing *qui tam* suits because of the jurisdictional exemption for suits based on information already known to the United States. *Id.* (citing 31 U.S.C. § 232(C) (1946)). But the 1986 amendments allow suits based on such information as long as it is not publicly disclosed, and therefore do not prevent federal employees from acting as relators. *Id.* If the information concerning the fraud was publicly disclosed, however, the Ninth Circuit has held such a government employee cannot qualify as an "original source" under § 3730(e)(4)(B). *See United States ex rel. Fine v. Chevron U.S.A., Inc.,* 72 F.3d 740, 743 (9th Cir. 1995) (auditor for Office of Inspector General who brought *qui tam* suit based upon information contained in public audit reports "was no volunteer").

Even assuming that the Eighth Circuit would analyze the voluntary reporting requirement in the same manner as the Ninth Circuit, the pleadings in the present action only establish that Cox is a "Quality Assurance Specialist" who "works with and supervises defense contractors and their production of goods for the U.S. Government." (Complaint, ¶¶ 12-13.) "Specifically, he worked to ensure the quality of goods produced by GDATP including parts for Blackhawk helicopters and other military equipment." (*Id.*, ¶ 16.) Cox alleges that he "reported shoddy production and manufacturing practices by General Dynamics[,]" which presumably was part of his work in "ensur[ing] the quality of goods produced by GDATP[,]" but Cox also alleges the he "reported false claims made by GDATP to the U.S. Government."

15

(*Id.*, ¶ 17.) It cannot be determined from the face of the complaint that the discovery and reporting of false claims was also part of Cox's job duties.[8] Cox has sufficiently alleged that he "is the original source of this information" because he "has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing" the present action under the FCA. (*Id.*, ¶ 10.)

### B. Heightened Pleading Requirement

The FCA imposes liability if a defendant (1) "knowingly presents, or causes to be presented, [to a federal official] a false or fraudulent claim for payment or approval," or (2) "knowingly makes . . . a false record or statement to get a false or fraudulent claim paid or approved." *United States ex rel. Roop v. Hypoguard USA, Inc.,* 559 F.3d 818, 822 (8th Cir. 2009) (quoting 31 U.S.C. § 3729(a)(1)-(2)). Grounded in fraud, FCA claims must satisfy Rule 9(b)'s heightened pleading requirement: "[A] party must state with particularity the circumstances constituting fraud or mistake." *Id.* (quoting Fed.R.Civ.P. 9(b)). To meet this standard and enable the defendant to respond "specifically and quickly," a complaint alleging fraud "must identify who, what, where, when, and how." *Id.* (quoting *United States ex rel. Costner v. United States,* 317 F.3d 883, 888 (8th Cir. 2003)). If it alleges a systematic practice of submitting fraudulent claims, the FCA complaint "must provide some representative examples of [the] alleged fraudulent conduct," specifying "the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in

---

[8] Frankly, though, it is difficult to understand why Cox's job description should determine whether the court can hear this action. If this had been the first action Cox filed against GDATP, the fact that his federal job required him to report false claims to the government apparently would not bar the action. It appears the present action could also be maintained if Cox were a private citizen, regardless of the fact that he made a public disclosure by not filing his pleadings under seal in the prior action.

16

them, and what was obtained as a result." *Id.* (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556-57 (8th Cir. 2006)). It is evident that Cox has failed to state with particularity the circumstances of GDATP's alleged fraud.

Though the district court "should freely give leave [to amend] when justice so requires," Fed.R.Civ.P. 15(a)(2), plaintiffs do not enjoy "an absolute or automatic right to amend" a deficient FCA Complaint. *Id.* (quoting *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005)). "[D]enial of leave to amend may be justified by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Joshi*, 441 F.3d at 557 (quoting *United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d 932, 936 (8th Cir. 2001)).

GDATP argues that it "should not have to continue to spend significant amounts of time and money responding to Plaintiff's plethora of pleadings, in addition to the time and money spent in responding to the Government investigation." (Filing 46, at 10.) Considering that GDATP was not required to respond to the FCA claim when it was first alleged in the amended complaint in Case No. 4:07CV3168, and that Cox has not previously amended his pleadings in the present action, which was filed immediately upon the dismissal of the prior action, there is no legitimate basis for finding undue delay, bad faith, or unfair prejudice. GDATP also contends that any amendment would be futile because Cox is not an "original source", but, as discussed above, this jurisdictional fact has been sufficiently alleged.

Cox's informal request to amend does not provide any specifics regarding the proposed amendment. Although I could require Cox to file a motion for leave to amend and to attach a proposed amended complaint, *see* NECivR 15.1(a), I will instead direct him to file an amended complaint that fully satisfies the requirements of Rule 9(b) as outlined above.

## *III.  CONCLUSION*

In response to GDATP's motion to dismiss, Cox has withdrawn counts 2 and 3 of his complaint, involving alleged violations of the RICO Act and of state and federal whistleblower statutes.  It appears from the allegations of the complaint that the court has subject matter jurisdiction over count 1, the FCA claim.  However, the complaint fails to state with particularity the circumstances of the defendant's alleged submission of false or fraudulent claims to the government for payment or approval. Amendment is therefore required.

Accordingly,

IT IS ORDERED that:

1.   Counts 2 and 3 of the plaintiffs' complaint are deemed withdrawn and are dismissed without prejudice.  A final judgment will be entered by separate document dismissing counts 2 and 3 without prejudice, and dismissing Phillip Cox as a party plaintiff in his individual capacity.

2.   The defendant's motion to dismiss (filing 38) is granted in part and denied in part:

   a.   The defendant's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is denied.

   b.   The defendant's Rule 9(b) motion is granted, and the plaintiff shall be required to file an amended complaint that fully satisfies the pleading requirements of Rule 9(b) by January 29, 2010.

   c.   In all other respects, the motion is denied without prejudice.

3. If the relator does not file an amended complaint by January 29, 2010, this action may be dismissed without further notice.

January 6, 2010.  BY THE COURT:

*Richard G. Kopf*
United States District Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.